Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 925 | **DATE** | 3/11/2003 |
| **CASE TITLE** | Nelmark, et al. vs. Helms | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Judgment of the Bankruptcy Court is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 2 number of notices | **Document Number** |
| X | Notices mailed by judge's staff. | | MAR 12 2003 date docketed | |
| | Notified counsel by telephone. | | | 13 |
| | Docketing to mail notices. | | docketing deputy initials | |
| X | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | 03 MAR 11 PM 3:13 | 3/11/2003 date mailed notice | |
| | MD | courtroom deputy's initials | FILED | MD mailing deputy initials |
| | | Date/time received in central Clerk's Office | | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JULIE MARIE NELMARK and ANN GRECO, ) ) ) Appellants, ) ) v. ) ) BRENDA PORTER HELMS, not ) individually but solely as Trustee in ) bankruptcy for James P. Roti, ) ) Appellee. ) | Case No. 02 C 0925<br>Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

In an adversary complaint filed in the United States Bankruptcy Court for the Northern District of Illinois (Bankr. Case No. 00 A 1179), appellee Brenda Porter Helms, as Chapter 7 trustee ("the trustee") of the estate of James P. Roti ("the debtor"), under 11 U.S.C. § 542(a)[1] claimed turnover of property of the debtor's estate by appellants Julie Marie Nelmark ("Nelmark") and Ann Greco ("Greco"), who are daughters of the debtor; and avoidance of the transfers as fraudulent, pursuant to § 548(a)(1)(A) and (B) and the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 160/5(a)(1), 160/5(a)(2) and 160/6(a). The Honorable John H. Squires, Bankruptcy Judge, made findings of fact and conclusions of law after a two-day bench trial. The bankruptcy court entered judgment in favor of the trustee on all claims and ordered under § 544(b)(1) that each appellant pay the trustee the principal sum of $29,850 plus prejudgment interest. *In re Roti*, 271 B.R. 281 (Bankr. N.D. Ill. 2002).

---

[1] All references hereinafter to statutory sections are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless specifically stated otherwise.

1



Appellants filed a timely appeal which is presently before this court. As an appeal of a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (H), this court is to review the bankruptcy court's findings of fact under a clearly erroneous standard and conclusions of law under a *de novo* standard. *In re Smith*, 286 F.3d 461, 464-65 (7th Cir. 2002). Because the bankruptcy court summarized the facts and testimony in detail in its opinion, *In re Roti*, 271 B.R. at 287-91, the court does not recite them here but incorporates them by reference. For the reasons set forth herein, this court affirms the bankruptcy court's judgment.

## DISCUSSION

Appellants argue that the bankruptcy court erred when it held that (a) the transfers were fraudulent under § 548(a)(1) and the UFTA, 740 ILCS 160/5(a) and 160/6(a); (b) appellants were "initial transferees" under § 550(a)(1); (c) appellants were not entitled to a good faith defense under § 548(c); and (d) the trustee was entitled to recover the value of the transfers pursuant its turnover claim under § 542(a).

**A.  whether the transfers were fraudulent**

Appellants argue that the bankruptcy court erred in holding that the transfers constituted "actual fraud" within § 548(a)(1)(A) and "fraud in fact " under the UFTA, 740 ILCS 160/5(a)(1). Further, appellants argue that the bankruptcy court erred in finding "constructive fraud" pursuant to § 548(a)(1)(B) or "fraud in law" pursuant to the UFTA, 740 ILCS 160/5(a)(2) and 160/6(a).[2]

---

[2]Section 548 (Fraudulent transfers and obligations) states, in relevant part:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or

2

*1. actual fraud/fraud in fact*

Appellants perfunctorily contend that the bankruptcy court erred in finding that certain "badges of fraud," used to determine whether a transfer was made with actual intent to defraud a creditor, were present in this case. *In re Roti*, 271 B.R. at 294, 297, 301, 303-04. The trustee argues, and the court agrees, that appellants have waived this argument because they fail to cite the record to demonstrate that the bankruptcy court was erroneous in finding nine badges of fraud. *Id.* at 297, 303-04; *see* FED. R. BANKR. P. 8010(a)(1)(E) (the argument in the brief shall contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.").

More to their point, appellants argue that even if badges of fraud were present, that does not necessarily mean there was fraud; rather, the bankruptcy court failed to consider other factors that demonstrated the debtor did not actually intend to hinder, delay or defraud his creditors. For example, they point out that the debtor made several attempts to open a bank account before

---

obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; . . . .

In addition, 740 ILCS 160/5 (Transfer or obligation fraudulent as to creditor--Claim arising before or after transfer) states, in relevant part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, . . . .

Moreover, 740 ILCS 160/6 (Transfer or obligation fraudulent as to creditor--Claim arising before the transfer) states, in relevant part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation . . . .

3

asking appellants to hold the funds and that the debtor used part of the transferred funds to pay some of his creditors, which "preserved" the bankruptcy estate even though admittedly it might have created a preference. (Appellants' Br. at 10.) As the trustee points out, the bankruptcy court specifically found that the debtor's purpose was "at least, hindering and delaying [American National] Bank in its efforts to collect [a] judgment . . . ." *In re Roti*, 271 B.R. at 297. That a different fact-finder might have drawn a different conclusion does not make this finding clearly erroneous. Furthermore, the trustee was not required to prove intent to defraud if she proved intent to hinder or delay. *E.g., Shapiro v. Wilgus*, 287 U.S. 348, 353-56 (1932). Or, similarly stated, actual intent is shown where the debtor's transfers are motivated even in part by a desire to hinder, delay, or defraud creditors. *Kelley v. Thomas Solvent Co.*, 725 F. Supp. 1446, 1455 & n.4 (W.D. Mich. 1988) (holding the same under Michigan law); *see also Premier Prop. Mgmt. v. Chavez*, 728 N.E. 2d 476, 481-82, 191 Ill. 2d 101, 110-11 (2000). Certainly, the bankruptcy court properly found that American National Bank was hindered in its efforts to collect its judgment. In fact, the bankruptcy court went further, stating, "[T]his is a classic example of a debtor engaging in fraudulent transfers by placing assets in the names of insiders, under his control or direction, to frustrate the enforcement of a judgment of another creditor whose claim he did not want to pay." *In re Roti*, 271 B.R. at 297. Appellants do not demonstrate that the bankruptcy court's findings were clearly erroneous or incorrect as a matter of law under § 548(a)(1)(A) and 740 ILCS 160/5(a)(1).

2.  *constructive fraud/fraud in law*

Appellants argue that the bankruptcy court erred in finding that the debtor did not receive "reasonably equivalent value" under § 548(a)(1)(B) and the UFTA, 740 ILCS 160/5(a)(2) and 160/6(a), when appellants provided the debtor with value by allowing him to use their bank

4

accounts and returning the funds back to the debtor. (Appellants' Br. at 11.) Appellants further dispute the bankruptcy court's determination that where the debtor chose to spend the transferred funds on his home and boat, the bankruptcy estate did not receive a benefit nor did the debtor preserve the estate. *In re Roti*, 271 B.R. at 298.

Appellants cite no authority that use of their own personal bank accounts constitutes value to the debtor. Rather, the bankruptcy court stated, "The Seventh Circuit has held that the receipt of funds for a debtor by a transferee and subsequent transfer back to the debtor without consideration paid by the initial transferee lacks reasonably equivalent value." *Id.* at 295, citing *In re Carlson*, 263 F.3d 748, 750 (7th Cir. 2001) (stating that where the debtor, a personal injury attorney, transferred his already earned fees to his friend and fellow attorney pursuant to a purported "practice merger agreement," the transfer was "made without consideration and with intent to defraud [the debtor's] creditors, and thus a fraudulent conveyance and indeed one involving both constructive and actual fraud."); *see also The Nostalgia Network, Inc.* v. *Lockwood*, 215 F.3d 717, 720 (7th Cir. 2002) (determining that a court need not inquire further under 740 ILCS 160/6(a) when the facts show a transfer is not supported by consideration, citing *In re Roti*). The bankruptcy court properly reasoned that appellants did not give the debtor any consideration for the transfers because the debtor did not receive any value at the time of his transfers to appellants. *In re Roti*, 271 B.R. at 297-98; *see In re Mussa*, 215 B.R. 158, 172 (Bankr. N.D. Ill. 1997) ("Reasonably equivalent value is measured at the time of the transfer."). Furthermore, the bankruptcy court pointed out that the debtor's subsequent use of the funds on his home and boat primarily benefitted him because he continued to occupy his home and have use of his boat. *In re Roti*, 271 B.R. at 298; *see also The Nostalgia Network*, 315 F.3d at 720 (discussing the "seeping back" of funds to the debtor and citing *In re Roti*). Appellants do not

demonstrate that the bankruptcy court's findings were clearly erroneous or incorrect as a matter of law.

## B. whether appellants were initial transferees

Having concluded that the transfers were fraudulent, the bankruptcy court ruled that the appellants were liable under § 550(a)(1) to the estate for the value of the transfers, concluding that none of the exceptions applied, including that of § 550(b)(1), which provides an exception where "a transferee takes for value . . . in good faith, and without knowledge of the voidability of the transfer avoided; or any immediate or mediate good faith transferee of such transferee." The bankruptcy court cited cases holding that the defense under § 550(b)(1) is unavailable to an initial transferee, *In re Roti*, 271 B.R. at 295, and ruled further that the defense of § 548(c), which requires good faith on the part of the transferee as well as an exchange of "value," was not proved.

Appellants argue that the bankruptcy court erred in finding that they were "initial transferees" within § 550(a)(1) under the "dominion and control" test set forth in *Bonded Fin. Serv., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988).[3] Appellants assert that they were "mere conduits," not initial transferees, because they did not receive any benefit from holding the debtor's funds in their bank accounts, and they were obligated to follow the debtor's instructions in disposition of the funds and would have been liable to the debtor had they used

---

[3]Section 550 (Liability of transferee of avoided transfer) states, in relevant part:

> (a) Expect as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
>
> (1) the initial transferee of such transfer . . . .

6

the funds for their own purposes. Appellants also rely on *In re Circuit Alliance, Inc.*, 228 B.R. 225 (D. Minn. 1998), for the proposition that the dominion and control test involves more than possession of funds and a one-time act of directing the funds to further the transfer but "an unfettered *legal* right to use the funds for the possessor's *own* purposes and benefit." *Id.* at 232 (emphasis in original).[4]

To determine what constitutes an "initial transferee" under § 550(a)(1), the Seventh Circuit in *Bonded*, 838 F.2d at 893, adopted what has become known as the "dominion and control" test when it stated that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." The court held that where a bank received no benefit and had to follow the instructions that came with the check to deposit the funds in a particular account, a bank was a "financial intermediary" and not an initial transferee under § 550(a)(1). *Id.* at 893-94. The court in *Bonded* thus placed a boundary on the general principle which avoids "transfers without either sufficient consideration or bad intent, for they, no less than gifts, reduce the value of the debtor's estate and thus the net return to creditors as a group." *Id.* at 892. A similar result occurred in *In re Circuit Alliance, Inc.*, which held that a lawyer who placed funds in her client trust account was not an initial transferee but a "professional intermediary." 228 B.R. at 232-33.

---

[4]The court in *In re Circuit Alliance, Inc.* held that the debtor's bankruptcy attorney was not an initial transferee but a "mere conduit" when she, according to the debtor's instructions, received funds from the debtor, deposited the funds in her law firm's trust account and then disbursed the funds to the debtor's home mortgage lender. 228 B.R. at 228-29, 233. The court noted that the attorney acted solely as an intermediary, had no legal interest in the funds and had no authority to direct the funds to her own use. *Id.* at 233. In making this determination, the court stated:

> Generally, "mere conduits" hold transferred funds via escrow, trust, or deposit, and do so only in the status of commercial or professional intermediaries for the parties that actually hold or receive a legal right, title, or interest. Examples of them include banks, . . . real estate escrow and title companies, . . . securities or investment brokers, . . . and attorneys holding funds in trust in connection with settlement of disputes.

*Id.* (internal citations and quotations omitted).

Here, appellants rely on a verbal agreement with their father that they would hold the money and follow his instructions, which they did, in fact, as a basis for their "intermediary" argument. They received no benefit, they say, and they, like the bank and the attorney in the cited cases, were subject to liability if they converted the funds to their own use. Although the facts here and in *Bonded* and *In re Circuit Alliance, Inc.* are arguably alike in these respects, appellants ignore other parts of the record which were not at issue in the cited cases and would readily distinguish them, for example, that they were the debtor's daughters, thus insiders, and they commingled the debtor's funds with their own funds. *See In re Roti*, 271 B.R. at 296. Further, as the trustee points out, the record demonstrates that the debtor in his bankruptcy filings never identified his daughters as custodians of his money as he was obligated to do had that been the case, and he did not list the funds as an asset in his bankruptcy schedules. With these facts added, it is obvious that appellants were neither commercial or professional intermediaries nor otherwise akin to the defendant in either *Bonded* or *In re Circuit Alliance, Inc. See In re Harbour*, 845 F.2d 1254, 1257-58 (4th Cir. 1988) (holding that the defendant, who served as an intermediary for transferring funds from the debtor, who was her son's business associate and friend, to her son, was not a mere conduit but an initial transferee in a fraudulent conveyance action).[5] For these reasons, appellants do not demonstrate that the bankruptcy court's determination that appellants were initial transferees under § 550(a)(1) was clearly erroneous as a matter of fact or incorrect as a matter of law.

---

[5] Appellants misread *In re Harbour* where they argue that the court applied equitable principles to hold that the defendant was liable as an initial transferee. The court, however, only noted with approval how other courts applied equitable principles to find commercial entities that routinely handle transactions are mere conduits but distinguished the facts in its case, finding that the defendant was an insider. 845 F.2d at 1257-58. In any event, *Bonded* explicitly rejects the use of equitable powers to excuse an initial transferee from repaying, resting instead on a narrowed definition of initial transferee. 838 F.2d at 894.

## C. whether appellants had a good faith defense

Appellants contend that the bankruptcy court erred in finding that they were not entitled to a good faith defense under § 548(c), which provides that a transfer is voidable where a transferee "takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee . . . gave value to the debtor in exchange for such transfer . . . ." As discussed above, there was no value transferred to the debtor. *See In re Roti*, 271 B.R. at 299. Further, the bankruptcy court made extensive findings that appellants failed to act in good faith. *Id.* at 298-99. Indeed, contrary to appellants' contention that they played no "role in placing funds out of the reach of creditors" (Appellants' Br. at 13-14), the bankruptcy court determined that appellants lacked good faith because, *inter alia*, they knew of the debtor's financial problems and were parties to his scheme to hinder and delay his creditor in its collection efforts. *In re Roti*, 271 B.R. at 298-99, citing, *inter alia*, *In re Harbour*, 845 F.2d at 1258 ("Examining [the] facts in the light most favorable to [the defendant], the kindest inference which can reasonably be drawn is that she aggressively ignored facts which would have put her on notice that she should investigate these facially suspect transactions."). Appellants do not demonstrate that the bankruptcy court's findings were clearly erroneous or incorrect as a matter of law.

## D. whether the value transferred to appellants is subject to turnover to the trustee

Appellants argue that the value transferred to them by the debtor is not subject to turnover to the trustee pursuant to § 542(a)[6] because they returned the funds to the debtor's

---

[6]Section 542(a) states:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such

9

estate. The trustee argues that this argument was never made to the bankruptcy court and is thus waived and further argues that the bankruptcy court properly concluded that delivering the funds to the debtor or a creditor does not satisfy § 542(a). The bankruptcy court correctly found that the appellants returned the proceeds to the debtor or others at his direction, not to the trustee, stating

> Although the Defendants either returned the proceeds to the Debtor or to others at his direction, this was done without notice to the Trustee, the creditors or the Court, and their lack of possession of the funds does not obviate their liability for the value thereof. The Defendants have not raised any affirmative defense to the Trustee's turnover claim.

*In re Roti*, 271 B.R. at 292. The bankruptcy court correctly construed § 542(a), stating,

> Defendants having possession or control of property of the estate must turn it over to the trustee or become liable to the trustee for its value, unless they have disposed of the property without actual notice or knowledge of the bankruptcy case. *In re USA Diversified Prods., Inc.*, 100 F.3d 53, 56-57 (7th Cir. 1996).

*Id.* Plainly, appellants have failed to demonstrate that the bankruptcy court's findings of fact were clearly erroneous or that it misapplied the law. Although appellants find themselves liable for the transfer even though they received no monetary benefit, the policy of the law is served in that the harsh consequences on those who knowingly participate in proscribed transactions create an incentive to obey the law.

---

property is of inconsequential value or benefit to the estate.

## ORDER

Wherefore, for the reasons set forth above, the judgment of the bankruptcy court is affirmed.

ENTER:

*Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 11, 2003